Louis J. Manzo (*pro hac vice*)
LManzo@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

Mark S. Kokanovich (SBN 021168)
kokanovichm@ballardspahr.com
Helen Hitz (SBN 039579)
hitzh@ballardspahr.com
BALLARD SPAHR LLP
1 E Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5400
Facsimile: (602) 798-5595

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 26-CR-00660-PHX-DGC (MTM) |
|---|---|
| Plaintiff, | |
| v. | **MOTION FOR A BILL OF PARTICULARS AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS** |
| Brian Rowan, | |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

I.    MOTION ...................................................................................................................6

II.   MEMORANDUM OF POINTS AND AUTHORITIES.........................................6

   A.    Introduction.................................................................................................6

   B.    Legal Standard ...........................................................................................10

   C.    Mr. Rowan is Entitled to a Bill of Particulars. ..........................................11

      1.   The Indictment Does Not Adequately Identify the Alleged Co-Conspirators
      and Third Parties....................................................................................12

      2.   The Indictment Does Not Specify Which Conduct the Government Attributes
      to Mr. Rowan. ........................................................................................13

      3.   The Indictment Does Not Identify the Particular Transactions, Payments,
      Kickbacks and Bribes, and Claims Underlying the Alleged Conspiracy...........................16

III.  CONCLUSION .......................................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Brady v. Maryland*,
373 U.S. 83 (1963) ................................................................................................. 9

*U.S. v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987) ............................................................................... 11

*U.S. v. Cerna*,
No. CR 08-0730 WHA, 2009 WL 2998929 (N.D. Cal. Sept. 16, 2009) .............. 15

*U.S. v. Failla*,
No. CR-93-00294 (CPS), 1993 WL 547419 (E.D.N.Y. Dec. 21, 1993)................ 14

*U.S. v. Feil*,
No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) ................ 14

*U.S. v. Giese*,
597 F.2d 1170 (9th Cir. 1979) .............................................................................. 10

*U.S. v. Harbour*,
No. CR-19-00898-001-PHX-DLR, 2021 WL 842146
(D. Ariz. Mar. 4, 2021)................................................................................. 16, 17

*U.S. v. Holmes*,
No. 5:18-CR-00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020) ......... 10, 12

*U.S. v. Long*,
706 F.2d 1044 (9th Cir. 1983)........................................................................ 10, 11

*U.S. v. Mitchell*,
744 F.2d 701 (9th Cir. 1984) ................................................................................ 10

*U.S. v. Muhammed*,
No. CR-12-01793-PHX-DGC, 2013 WL 5200117 (D. Ariz. Sep. 16, 2013)........ 10

*U.S. v. Murgio*,
209 F. Supp. 3d 698 (S.D.N.Y. 2016).................................................................. 14

*U.S. v. Nachamie*,
91 F. Supp. 2d 565 (S.D.N.Y. 2000)........................................................ 11, 13, 17

*U.S. v. Ramirez,*
54 F. Supp. 2d 25 (D.D.C. 1999) ...................................................................... 15

*U.S. v. Rogers,*
617 F. Supp. 1024 (D. Colo. 1985) ............................................................. 12, 15

*U.S. v. Ryland,*
806 F.2d 941 (9th Cir. 1986) ........................................................................ 9, 13

*U.S. v. Savin,*
No. 00 CR. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...................... 17

*U.S. v. Vargas,*
No. 15-CR-00530-BLF-2, 2016 WL 1446773 (N.D. Cal. Apr. 13, 2016)............. 14

*U.S. v. Vasquez-Ruiz,*
136 F. Supp. 2d 941 (N.D. Ill. 2001)................................................................ 17

*U.S. v. Windley,*
No. CR-10-660-2-PHX-DGC, 2012 WL 2813859 (D. Ariz. July 10, 2012)... 10, 12

*Will v. U.S.,*
389 U.S. 90 (1967) .................................................................................... 10, 12

*Yeargain v. U.S.,*
314 F.2d 881 (9th Cir. 1963) ............................................................................ 12

**FEDERAL RULES**

Fed. R. Crim. P. 7(f)......................................................................................... 10

**OTHER AUTHORITIES**

Greg Haas, *Luxury Cars, Jewelry Seized in Federal Crackdown on Health Care Fraud; Las Vegas Residents Among 455 Charged*, KLAS 8 News Now (June 25, 2026), https://www.8newsnow.com/news/local-news/luxury-cars-jewelry-seized-in-federal-crackdown-on-health-care-fraud-las-vegas-residents-among-455-charged/ ................................................................................................ 8

Press Release, U.S. Attorney's Office, District of Arizona, *District of Arizona Announces Charges Involving Over $1.2 Billion in False or Fraudulent Claims as Part of National Health Care Fraud Takedown* (June 23, 2026), https://www.justice.gov/usao-az/pr/district-arizona-announces-charges-involving-over-12-billion-false-or-fraudulent-claims ............................................ 7

Press Release, U.S. Dep't of Just., *National Health Care Fraud Takedown Results in 455 Defendants Charged in Connection with Over $6.5 Billion in Alleged Fraud* (June 23, 2026), https://www.justice.gov/opa/pr/national-health-care-fraud-takedown-results-455-defendants-charged-connection-over-65 ....................7

Priscilla DeGregory & Josh Christenson, *Trump Crackdown Uncovers $6.5B in Fraud—and Your Taxes Were Wasted on Diamonds, Ferraris and a Boat Named Butt Nekkid*, N.Y. Post (June 23, 2026), https://nypost.com/2026/06/23/us-news/trump-crackdown-uncovers-6-5b-in-fraud-and-your-taxes-were-wasted-on-diamonds-ferraris/ ......................................7

Sarah Kliff, *Ferraris and Shell Companies: Justice Dept. Unveils Medicare Fraud Charges*, N.Y. Times (June 23, 2026), https://www.nytimes.com/2026/06/23/us/skin-substitutes-medicare-fraud.html ......................................................................................................7

Tony Garcia, *Las Vegas Man Facing Federal Indictment in Connection with $1.2*, Review Journal (June 24, 2026), https://www.reviewjournal.com/crime/las-vegas-man-facing-federal-indictment-in-connection-with-1-2b-fraud-scheme-3842547/ ......................................................................................................7

## I.   MOTION

Defendant Brian Rowan, by and through his undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 7(f), respectfully moves this Court for an Order directing the government to provide a Bill of Particulars concerning the charges alleged in the Indictment filed on June 17, 2026 (ECF 3). Specifically, Mr. Rowan seeks particulars concerning:

- For all Counts, each person or entity whom the government contends is an unindicted co-conspirator, aider and abettor, or other participant in the charged conduct, and for any participant whose identity is unknown, sufficient identifying information to distinguish that participant from others.
- For all Counts, the acts the government contends Mr. Rowan personally performed, directed, authorized, caused, or knowingly assisted, as distinguished from acts attributed solely to other participants.
- For Counts 2-4 and 6-10, the conduct and principal actor underlying any reliance on 18 U.S.C. § 2, including whether the government contends Mr. Rowan personally committed, aided and abetted, caused, or attempted to cause each charged transaction.
- For all Counts, the transactions, payments, contracts, kickbacks and bribes, and claims the government contends formed part of the charged conspiracy, together with the allegedly unlawful or false feature of each.

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or of an order based thereon.

## II.   MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Introduction

On June 22, notwithstanding the fact that Mr. Rowan and his employer had been in a fully cooperative posture with the government for more than two years, and the fact that Mr. Rowan was known by the government to be represented by counsel,

nearly a dozen federal agents descended on Mr. Rowan's house in Nevada, where he resides with his wife and three children. After cordoning off his street, agents called Mr. Rowan and demanded that he exit his house with his hands up. With guns drawn by agents, Mr. Rowan complied completely, was placed in a police cruiser, and was driven to the federal district courthouse in Las Vegas. Neighbors gawked at a scene befitting America's Most Wanted and a violent criminal destined for lengthy pretrial detention.

But the arrest was just for show. Once inside the vehicle, Mr. Rowan learned from the arresting agents that he would be quickly released in a couple hours following his arraignment. Further, agents did not execute a search warrant on the premises. Self-surrender would have been straightforward. Instead, the Department of Justice opted for a guns drawn arrest meant to intimidate, publicize, and embarrass.

Across the country, a different show of force unfolded. The Acting Attorney General of the United States, accompanied by the Director of the Federal Bureau of Investigation, held a press conference to herald the Department's healthcare fraud takedown. In order to draw media attention, the Department timed up arrests and charges on 455 unrelated individuals in unrelated offenses. The Department called the takedown "historic" and the "largest" ever.[1] Behind the scenes, the Department's press machine went to work and helped splash Mr. Rowan's name onto headlines around the country. Mr. Rowan's reputation is forever destroyed, all without a trial.[2]

---

[1] *See* Press Release, U.S. Dep't of Just., *National Health Care Fraud Takedown Results in 455 Defendants Charged in Connection with Over $6.5 Billion in Alleged Fraud* (June 23, 2026), https://www.justice.gov/opa/pr/national-health-care-fraud-takedown-results-455-defendants-charged-connection-over-65.

[2] *See, e.g.*, Press Release, U.S. Attorney's Office, District of Arizona, *District of Arizona Announces Charges Involving Over $1.2 Billion in False or Fraudulent Claims as Part of National Health Care Fraud Takedown* (June 23, 2026), https://www.justice.gov/usao-az/pr/district-arizona-announces-charges-involving-over-12-billion-false-or-fraudulent-claims; Sarah Kliff, *Ferraris and Shell Companies: Justice Dept. Unveils Medicare Fraud Charges*, N.Y. Times (June 23, 2026), https://www.nytimes.com/2026/06/23/us/skin-substitutes-medicare-fraud.html; Priscilla DeGregory & Josh Christenson, *Trump Crackdown Uncovers $6.5B in Fraud—and Your Taxes Were Wasted on Diamonds, Ferraris and a Boat*

Then, following that "historic" day, the Department's priorities seemed to shift. After devoting significant resources to a completely unnecessary guns drawn arrest in front of Mr. Rowan's community and a press conference from the highest law enforcement officer in the United States, the Department has not followed through on its most basic obligation: discovery.

For 50 days, Mr. Rowan has awaited discovery. In those 50 days, the Department has turned over zero pages of discovery. This inaction would shock the Court's conscience in any criminal case, but particularly so here where the Indictment's vagueness is matched only by its conclusory nature. Criminal litigation can never depend on the timing of the Department's media interests—especially here, where a conviction under the government's loss calculation would mean a de facto guideline life sentence for Mr. Rowan.

During these first 50 days of litigation, Mr. Rowan's attorneys have made every effort to obtain discovery. This included hand-delivering hard drives to the Department on July 10 and, on multiple occasions, during an extended negotiation over a protective order, offering to keep *all* discovery to attorneys' eyes only even though the protective order implicated a *limited* subset of documents.[3] These efforts were unsuccessful. Ultimately, Mr. Rowan's attorneys were forced to raise the issue during his July 29 initial appearance in the District of Arizona.

---

*Named Butt Nekkid*, N.Y. Post (June 23, 2026), https://nypost.com/2026/06/23/us-news/trump-crackdown-uncovers-6-5b-in-fraud-and-your-taxes-were-wasted-on-diamonds-ferraris/; Tony Garcia, *Las Vegas Man Facing Federal Indictment in Connection with $1.2B Fraud Scheme*, Review Journal (June 24, 2026), https://www.reviewjournal.com/crime/las-vegas-man-facing-federal-indictment-in-connection-with-1-2b-fraud-scheme-3842547/; Greg Haas, *Luxury Cars, Jewelry Seized in Federal Crackdown on Health Care Fraud; Las Vegas Residents Among 455 Charged*, KLAS 8 News Now (June 25, 2026), https://www.8newsnow.com/news/local-news/luxury-cars-jewelry-seized-in-federal-crackdown-on-health-care-fraud-las-vegas-residents-among-455-charged/.

[3] Consistent with the Protective Order (ECF 16), Mr. Rowan's attorneys are currently in communication with the government over the defense's request to utilize artificial intelligence (AI) tools in sorting through discovery once received. Mr. Rowan's attorneys' use of AI, however, has *no impact* on the government's ability to provide discovery.

During the July 29 initial appearance, the Department promised that once the jointly agreed-to Protective Order was entered on the docket, the Department would produce initial discovery, estimated to total approximately one million pages of documents, or 20% of total case discovery. That afternoon, the Court entered the Order (ECF 16). However, the government's promise has gone unfulfilled. Nearly two weeks later, there is still no discovery.

As described further below, even when the Department does produce initial discovery, a bill of particulars will be necessary. First, the Department has not provided any timeline on when *full* discovery will be complete.[4] Mr. Rowan's attorneys cannot simply wait to begin their defense based on the Department's timeline.[5] Second, full discovery is unlikely to cure the Indictment's vagueness. For example, even when discovery is complete at an unknown future date, the Indictment does not specify which of the $4 billion in alleged claims it believes were false versus valid,[6] nor which of the false claims were allegedly caused directly by Mr. Rowan, aided and abetted by him, or caused completely independently of him. Without a bill of particulars, the Department has denied Mr. Rowan the ability to prepare a defense, a result obviously inconsistent with basic tenets of the Constitution and particularly galling given the effort the Department devoted to publicly arresting and publicizing its allegations against him.[7]

---

[4] Mr. Rowan's attorneys have asked the Department when discovery will be complete. See Attachment A (Letter from Mr. Lou Manzo, Beveridge & Diamond, P.C., to Mr. Shane Butland, Dep't of Just. (Aug. 3, 2026)). The Department has not responded.

[5] The Department's choice not to produce full discovery is inexcusable and the subject of forthcoming motions. This is particularly true when the Department should have had discovery ready and complete at the time of the initial appearance since the Department chose the time and manner to bring this case. Indeed, no bomb exploded, no violence was imminent, no conspiracy was ongoing (the Indictment's alleged conspiracy ended more than two years ago). The Department's timeline seems to have been driven by its media interests.

[6] Mr. Rowan's attorneys presume that the potentially billions of dollars in valid claims allegedly caused to be submitted by Mr. Rowan and acknowledged in the Indictment (*see* Indictment ¶ 58) will be produced under *Brady v. Maryland*, 373 U.S. 83 (1963).

[7] Mr. Rowan's attorneys have attempted to resolve the need for further information without court involvement. *See* Attachment A. The government has not responded.

**B.    Legal Standard**

Where an indictment fails to apprise a defendant in "plain, concise, and definite written statement[s] of the essential facts constituting the offense charged," courts may order that the government file a bill of particulars. Fed. R. Crim. P. 7(c)(1), (f). While the court has "very broad discretion in ruling upon requests for such bills," *Will v. U.S.*, 389 U.S. 90, 99 (1967), Rule 7(f) encourages courts to take "a more liberal attitude . . . toward bills of particulars." Fed. R. Crim. P. 7(f) advisory committee's note to 1966 amendment.

A bill of particulars serves three primary purposes:

> [1] to inform the defendant of the nature of the charge against
> him with sufficient precision to enable him to prepare for trial,
> [2] to avoid or minimize the danger of surprise at the time of
> trial, and [3] to enable him to plead his acquittal or conviction
> in bar of another prosecution for the same offense when the
> indictment itself is too vague, and indefinite for such purposes.

*U.S. v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). "A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense." *U.S. v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). A bill of particulars is warranted where the indictment fails to provide sufficient details of the charges, and the government has not provided full discovery to the defense. *See U.S. v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984).

While "[f]ull discovery will obviate the need for a bill of particulars," *Long*, 706 F.2d at 1054, the government may not merely refer a defendant to voluminous discovery. *See, e.g.*, *U.S. v. Windley*, No. CR-10-660-2-PHX-DGC, 2012 WL 2813859, at *4 (D. Ariz. July 10, 2012) (Campbell, D.) ("[T]he Court concludes that [the identities of co-conspirators, victims, and locations] should be provided by the government, and not merely by reference to the 5,500 pages of discovery produced to date."); *U.S. v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *9 (N.D. Cal.

Feb. 11, 2020) (granting bill of particulars where "immense" discovery "create[s] a substantial risk that Defendants may be unfairly surprised at trial"); *U.S. v. Muhammed*, No. CR-12-01793-PHX-DGC, 2013 WL 5200117, at *2 (D. Ariz. Sep. 16, 2013) (Campbell, D.) ("It is not enough, however, to simply assure Defendant or this Court that the necessary facts are found somewhere in the tens of thousands of pages of discovery materials."); *U.S. v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (per curiam) ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged."); *U.S. v. Nachamie*, 91 F. Supp. 2d 565, 571–72 (S.D.N.Y. 2000) (ordering bill of particulars where "[t]he Government . . . has produced over 200,000 pieces of paper in hundreds of boxes and files, relating to 2,000 Medicare claims[, b]ut it has not yet informed the defendants which of these claims were false and in what way they were false.").

### C.     Mr. Rowan is Entitled to a Bill of Particulars.

Following years of investigation, the government alleges a conspiracy long on conclusions but short on information. Critically, the Indictment leaves Mr. Rowan guessing about the most basic aspects: the identities of alleged co-conspirators or third parties, the acts attributed to Mr. Rowan as distinguished from acts attributed to others, and the particulars of the alleged kickbacks and bribes, transactions, and contracts underlying the alleged conspiracy.

This request for a bill of particulars is not perfunctory defense posturing. Mr. Rowan's attorneys are at a legitimate loss as to how to defend this Indictment. By all accounts, Mr. Rowan had no patient contact, did not direct any provider to apply any wound care, and did not bill a single dollar to any healthcare program. Mr. Rowan also designed neither the rebate program, which is a commonly used business model across the healthcare field, nor the Joint Venture, which the Department of Justice refers to as a "shell company." Further, both the rebate and Joint Venture programs were approved by

attorneys representing Mr. Rowan's employer. Because the government has not provided full discovery—and at the present time, no discovery at all—to Mr. Rowan or provided any timeline on which discovery will be provided, a bill of particulars is necessary so that Mr. Rowan can understand the government's theory and prepare a defense. *See Yeargain v. U.S.*, 314 F.2d 881, 882 (9th Cir. 1963) ("The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense, and enable him to prepare an intelligent defense.").

### 1.     The Indictment Does Not Adequately Identify the Alleged Co-Conspirators and Third Parties.

The Indictment contains an unknown total quantity of unnamed co-conspirators, entities, individuals, and "others." These anonymized individuals and entities appear in 28 of the Indictment's 75 paragraphs. *See* Indictment ¶¶ 32, 33, 34, 35, 36, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 62, 65, 66, 70, 72. The government further identifies an unknown quantity of third parties referred to as "sales representatives" and "medical providers" in 24 of the Indictment's 75 paragraphs. *See id*. ¶¶ 33, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 57, 58, 59, 69. The Indictment does not reveal whether these repeated references concern one person, a small group, or multiple distinct actors; whether the unnamed sales representatives and providers overlap with the alleged co-conspirators; nor which participants the government attributes to each Count. Without that information, Mr. Rowan cannot identify the relevant witnesses, records, or transactions to investigate.

Courts, including this Court, routinely order the government to disclose the identity of individuals cited in an indictment because such information is "critical to defense preparation." *Windley*, 2012 WL 2813859, at *4; *see, e.g., Will*, 389 U.S. at 99 ("[I]t is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial."); *U.S. v. Rogers*, 617 F. Supp. 1024, 1028 (D. Colo. 1985) ("It is well-settled that the government must identify undisclosed

and unidentified co-conspirators, aiders and abettors, and other individuals involved in the criminal acts charged[.]"); *Holmes*, 2020 WL 666563, at *11 (requiring identification of co-conspirators where "scope of the alleged conspiracies is broad").

No indictment demands the identities of the unnamed parties more than this one. The Indictment alleges an unknown number of false and fraudulent claims and an unknown number of co-conspirators, sales representatives, medical providers, and unexplained "others." Without being provided the basic identities of the individuals referenced in the Indictment, preparation for a defense would be nearly impossible. Further, there is simply no good reason for the government to oppose providing the identities in this case, where witness security is a non-factor and the status of discovery is unknown. *See Nachamie*, 91 F. Supp. 2d at 573 ("[T]his case charges Medicare fraud—not narcotics trafficking or murder—and defendants must be provided with the names of known unindicted co-conspirators.").

Accordingly, for each count, Mr. Rowan requests not merely a list of witnesses, but, rather, the identity of each person or entity whom the government contends was an unindicted co-conspirator, aider and abettor, or other participant in the charged conduct and, for any participant whose identity is unknown, sufficient identifying information to distinguish that participant from others.

### 2.    The Indictment Does Not Specify Which Conduct the Government Attributes to Mr. Rowan.

The Court should require the government to identify the acts it attributes to Mr. Rowan—whether allegedly performed, directed, authorized, caused, or knowingly assisted by him—as distinguished from acts attributed solely to alleged co-conspirators or other participants.

It is well settled that a defendant is "entitled to know . . . the *theory* of the government's case." *U.S. v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986). In this case, Counts 2–4 alleging health care fraud under 18 U.S.C. § 1347, Counts 6–8 (alleging the offer and payment of kickbacks under 42 U.S.C. § 1320a-7b(b)(2)) and Counts 9–10

13

(alleging transactional money laundering under 18 U.S.C. § 1957) assert that Mr. Rowan aided and abetted such violations under 18 U.S.C. § 2. The Indictment identifies various transactions for each of these Counts, but it does not identify the acts Mr. Rowan allegedly performed, who allegedly committed the underlying offense, or the conduct Mr. Rowan allegedly aided, abetted, or caused. *See, e.g.*, Indictment ¶¶ 65, 70, 72. That is legally insufficient.

The government must provide Mr. Rowan with sufficient information to determine its theories of liability so that he can prepare a defense and be protected from surprise at trial. *See U.S. v. Vargas*, No. 15-CR-00530-BLF-2, 2016 WL 1446773, at *4 (N.D. Cal. Apr. 13, 2016) (ordering particulars of "whether the Government is proceeding on an aiding and abetting theory"); *U.S. v. Murgio*, 209 F. Supp. 3d 698, 723 (S.D.N.Y. 2016) ("The preparation necessary to defend against a claim that [the defendant] aided and abetted a bribe looks very different from the preparation necessary to defend against a charge he personally paid one"); *U.S. v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (ordering particulars on the "manner in which [the defendants] and each alleged co-conspirator . . . contributed to the charged conspiracy" even where the government produced over 70,000 pages of discovery because some discovery disputes remained); *U.S. v. Failla*, No. CR-93-00294 (CPS), 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993) (ordering bill of particulars to identify "whether the defendant is being charged as (1) an aider and abettor or accomplice, (2) a principal, or (3) both").

Requiring a bill of particulars outlining the government's principal versus aiding-and-abetting theories is particularly vital here, where the charges against Mr. Rowan rest substantially on vague allegations of the conduct of co-conspirators or unidentified "others." *See, e.g.*, Indictment ¶¶ 35 (Mr. Rowan and others contracted with sales representatives), 36 (Mr. Rowan and others paid illegal kickbacks and bribes), 48 (Mr. Rowan and others authorized and facilitated the issuance of sham invoices), 56 (Mr. Rowan and others caused providers to make false representations),

14

69 (Mr. Rowan committed or caused to be committed acts).

Other paragraphs of the Indictment are alternatively either completely superfluous and so should be struck as surplusage, or *vital* for Mr. Rowan to contest. For example, ¶ 39 alleges that Ms. Gehrke and Mr. King instructed sales representatives to seek out elderly populations with wounds and then order larger than necessary grafts for those wounds. The paragraph does not allege that Mr. Rowan knew of any of these actions and does not outline the theory of criminality. If Mr. Rowan did not know, does the government allege that he still criminally aided and abetted Ms. Gehrke and Mr. King's instructions? Are the sales representatives committing a crime by identifying elderly patients with wounds? Are the sales representatives acting criminally by ordering grafts that providers later apply (and bill for) using their own medical judgment? Did Mr. Rowan instruct the sales representatives or the providers or a combination of both to conduct unnecessary procedures? Mr. Rowan's attorneys cannot prepare a defense without the government outlining a theory of liability directly to Mr. Rowan. The answers to these questions are unclear particularly in *this* health care fraud case, where the Indictment does not (because it cannot) allege a single specific instance that Mr. Rowan (i) had access to a single patient or patient file and (ii) directed a provider to bill for unnecessary services. While the government is not required to provide defendants with all of its evidence, "[t]he government must . . . provide enough information to apprise defendants of the nature of their own alleged overt acts as well as those of co-violators." *Rogers*, 617 F. Supp. at 1029; *see also U.S. v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999) (government must provide particulars "so that each defendant may understand the government's view of his alleged role in the conspiracy"). The government has not done so here. Mr. Rowan is therefore entitled to enough information to understand his alleged role in the charged schemes. *See U.S. v. Cerna*, No. CR 08-0730 WHA, 2009 WL 2998929, at *3 (N.D. Cal. Sept. 16, 2009) ("Defendants cannot prepare a defense against such vague allegations.").

Accordingly, Mr. Rowan requests that the government identify acts the

15

government contends Mr. Rowan personally performed, directed, authorized, caused, or knowingly assisted, as distinguished from acts attributed solely to other participants. For Counts 2–4 and 6–10, Mr. Rowan requests that the government identify the conduct and principal actor underlying any reliance on 18 U.S.C. § 2, including whether the government contends Mr. Rowan personally committed, aided and abetted, caused, or attempted to cause each charged transaction.

**3. The Indictment Does Not Identify the Particular Transactions, Payments, Kickbacks and Bribes, or Claims Underlying the Alleged Conspiracy.**

The Indictment references an alleged scheme without identifying the particular contracts, payments, invoices, transactions, kickbacks, or claims the government contends were unlawful or false and without explaining the alleged defect in each. *See, e.g.*, Indictment ¶¶ 35 (contracts with sales representatives); 40 (over $271 million in kickbacks and bribes), 46 (issuance of "sham" invoices), 47 (instructions to providers), 55 (transfers between accounts). Most importantly, the Indictment leaves Mr. Rowan's attorneys wholly guessing regarding which false claims Mr. Rowan is alleged to have caused. For example, the Indictment alleges that Mr. Rowan caused the submission of $4 billion in claims. *Id*. ¶ 58. Of these $4 billion in claims, the government alleges that "many were false and fraudulent." *Id*. *But which ones?* And what act did Mr. Rowan do to cause the submission of the false claims? And how did Mr. Rowan's actions differ when he caused the submission of false claims as opposed to when he caused the submission of valid ones? These are fundamental questions, particularly when, again by all accounts, Mr. Rowan never saw a patient or patient file and never submitted a claim. Because the Indictment does not allege specific instances of fraud, the government improperly shifts the burden of proof to Mr. Rowan, effectively requiring him to prove that all transactions were legitimate. That is not how criminal law works. *See U.S. v. Harbour*, No. CR-19-00898-001-PHX-DLR, 2021 WL 842146, at *3 (D. Ariz. Mar. 4, 2021) (government cannot "presume[] that the defendant knows what the

government alleges that he did . . . , a premise inconsistent with the presumption of innocence" (citation omitted)).

A bill of particulars is appropriate where the indictment leaves the defendant to guess which transactions or claims are alleged to be false or unlawful. *See Nachamie*, 91 F. Supp. 2d at 571 (in Medicare fraud conspiracy case, ordering government to identify which of the 2,000 Medicare claims "were false and in what way they were false"); *U.S. v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (ordering particulars regarding "the records claimed to include false entries, and any allegedly fraudulent bills to insurers"); *U.S. v. Savin*, No. 00 CR. 45 (RWS), 2001 WL 243533, at *3 (S.D.N.Y. Mar. 7, 2001) (ordering identification of transactions at issue because otherwise defendant "will be forced to comb through this veritable mountain of documents and to attempt to guess which of the numerous transactions documented therein, and conducted over a six-year period, are alleged by the government to have been improper"); *Harbour*, 2021 WL 842146, at *2 ("lump[ing] together an unknown number of representations . . . inhibits Defendant from ascertaining which statements he must defend against"). Without basic transaction information, Mr. Rowan cannot determine which transactions to investigate, which records to review, or what alleged falsity or unlawful inducement he must address.

Accordingly, Mr. Rowan requests that the government identify the transactions, payments, kickbacks and bribes, and claims it contends formed part of the charged conspiracy and, for each, state the allegedly unlawful or false feature—including the parties, approximate date, amount, and basis of the alleged falsity or kickback—sufficient to permit Mr. Rowan to prepare his defense.

## III.    CONCLUSION

For the foregoing reasons, including the fact that the government has been investigating these matters for years, indicted and publicly and unnecessarily humiliated Mr. Rowan almost two months' ago, and has deliberately chosen to produce no discovery to date, Mr. Rowan respectfully requests that the Court order the

government to provide a Bill of Particulars including the following information and grant such other relief as the Court deems just and proper:

- For all Counts, each person or entity whom the government contends is an unindicted co-conspirator, aider and abettor, or other participant in the charged conduct, and for any participant whose identity is unknown, sufficient identifying information to distinguish that participant from others.
- For all Counts, the acts the government contends Mr. Rowan personally performed, directed, authorized, caused, or knowingly assisted, as distinguished from acts attributed solely to other participants.
- For Counts 2–4 and 6–10, the conduct and principal actor underlying any reliance on 18 U.S.C. § 2, including whether the government contends Mr. Rowan personally committed, aided and abetted, caused, or attempted to cause each charged transaction.
- For all Counts, the transactions, payments, contracts, kickbacks and bribes, and claims the government contends formed part of the charged conspiracy, together with the allegedly unlawful or false feature of each.

DATED this 10th day of August, 2026.

Respectfully submitted,

Louis J. Manzo
BEVERIDGE & DIAMOND, P.C
Mark S. Kokanovich
Helen Hitz
BALLARD SPAHR LLP.

Attorneys for Defendant

18

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August, 2026, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

_____
Louis J. Manzo