Louis J. Manzo (*pro hac vice*)
LManzo@bdlaw.com
BEVERIDGE & DIAMOND PC
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

Mark S. Kokanovich (SBN 021168)
kokanovichm@ballardspahr.com
Helen Hitz (SBN 039579)
hitzh@ballardspahr.com
BALLARD SPAHR LLP
1 E Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5400
Facsimile: (602) 798-5595

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Brian Rowan,

Defendant.

Case No. 26-CR-00660-PHX-DGC (MTM)

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

**ORAL ARGUMENT SCHEDULED FOR OCTOBER 13, 2026**

## TABLE OF CONTENTS

I. Introduction ........ 1
II. Argument ........ 2
A. Mr. Rowan seeks the Government's theory of this case, not its proof. ........ 2
1. The Government cannot recast a motion for basic particulars as a demand for evidence. ........ 2
2. The Government does not specify how the substantive offenses are allegedly attributable to Mr. Rowan. ........ 4
3. The Government has not defined the full alleged false-claim universe or the basis of alleged falsity for Counts 2–4. ........ 6
4. The Government's August 21 letter similarly fails to provide a complete trial co-conspirator list and identify the conduct attributed specifically to Mr. Rowan. ........ 7
B. Searchable but still incomplete discovery does not cure those omissions. ........ 8
1. This Court has rejected reference to discovery as a substitute for critical particulars. ........ 9
2. The Government cannot indict a large conspiracy and then claim it is too large to explain. ........ 10
III. Conclusion ........ 11

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*United States v. Chen*,
2011 WL 332713 (N.D. Cal. Jan. 29, 2011) .......... 3, 3

*United States v. Harbour*,
2021 WL 842146 (D. Ariz. Mar. 4, 2021) .......... 4, 5

*United States v. Long*,
706 F.2d 1044 (9th Cir. 1983) .......... 9

*United States v. Muhammed*,
2013 WL 5200117 (D. Ariz. Sept. 16, 2013) .......... 4, 10

*United States v. Ryland*,
806 F.2d 941 (9th Cir. 1986) .......... 2

*United States v. Vargas,*
2016 WL 1446773 (N.D. Cal. Apr. 13, 2016) .......... 5

*United States v. Windley*,
2012 WL 2813859 (D. Ariz. July 10, 2012) .......... 3, 4

**FEDERAL STATUTES**

18 U.S.C.
§ 2(a) .......... 5, 5
§ 2(b) .......... 5

**FEDERAL RULES**

Fed. R. Crim. P.
Rule 7(f) .......... 9

## I. INTRODUCTION

During the first fifty days of litigation, the Government authored two press releases but produced no discovery, despite repeated defense requests.[1] At Mr. Rowan's initial appearance in the District of Arizona, the Government said the only impediment to production was entry of a protective order. The Court entered a protective order that same day, yet eleven more days passed without discovery. Mr. Rowan timely filed his Motion for Bill of Particulars ("Motion") on August 9, fifty days after his initial appearance in Las Vegas and eleven days after his arraignment in Phoenix. Discovery began to flow the day after the filing.

The Government has now made three productions and sent an initial discovery letter on August 21.[2] These do not cure the need for a bill of particulars. The letter identified some, but *expressly not all*, co-conspirators and false-claim categories. Exhibit 1, at 2 (Letter from DOJ to Mr. Rowan on August 21, 2026) ("This list is not exhaustive and does not reflect the names of every individual considered by the Government to be a co-conspirator"; "These are not all claims that the Government considers to be false and fraudulent."). The Government's theory of the case therefore remains materially incomplete and unbounded.

Mr. Rowan is asking for the bare minimum. The Government alleges that he conspired to submit false claims and pay kickbacks. The Government should have to name who the conspirators were, identify the false claims submitted, and the kickbacks paid, at least in summary or categorical form. The Government has all this information readily available because it must have already presented it to the Grand Jury or it would have been impossible

---

[1] The Government blames the delay on defense counsel and protective order negotiations. But defense counsel first requested discovery on June 30, brought hard drives to the Department of Justice headquarters on July 10, and did not receive the Government's proposed protective order until July 16. That order governs only certain sensitive materials and never prevented production of other discovery.

[2] The Government's first production was substantial but largely unrelated to Mr. Rowan's alleged complicity. It included thousands of pages of patient files, even though Mr. Rowan never saw a patient, and bank records of individuals already charged by the Government. The second production included approximately 10,000 documents. This evening, the Government provided email notice that a third production of documents is forthcoming. Accounting for the Government's revised production log, more than 4 million promised documents remain outstanding.

for the Grand Jury to approve the Indictment. The Government offers no legitimate reason to withhold the same information from the defense.

The Government's position is untenable. It is essentially that Mr. Rowan should have waited because discovery was "forthcoming" at some unknown future date and would "clarify" its theory of the case. Response in Opposition to Defendant's Motion for Bill of Particulars ("Opp.") at 1–2, 8. But the Government has declined to say when discovery will be complete, *see* Exhibit 2 (Letter from Mr. Rowan to DOJ on August 14, 2026) and Exhibit 3 (Response from DOJ on August 18, 2026), and now says productions will continue "on a rolling basis," Exhibit 4, at 1 (Letter from DOJ to Mr. Rowan on August 25, 2026); Exhibit 5, at 1 (Letter from DOJ to Mr. Rowan on August 31, 2026).

In sum, the Government has accused Mr. Rowan, a single employee at a company, of an over-billion-dollar crime that, if convicted, could be dispositive as to whether he ever again sees his family outside the confines of a federal facility. Mr. Rowan is entitled to understand the offenses of which he is accused.

## II. ARGUMENT

### A. Mr. Rowan seeks the Government's theory of this case, not its proof.

#### 1. The Government cannot recast a motion for basic particulars as a demand for evidence.

The parties agree that a defendant "is not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphases in original); Opp. at 7. Mr. Rowan is not requesting every single exhibit, statement, billing code, or even witness name. He is asking for the conspirators, claims, and kickbacks that form and underlie the Government's alleged conspiracy to submit false claims and pay kickbacks. Without this basic information, Mr. Rowan cannot mount a defense.

The Government invokes *United States v. Chen* to argue that the Indictment, discovery to date and to come, and public filings in related cases collectively obviate a bill of particulars. Opp. at 15–17. But *Chen* involved a request for highly detailed information including every

meeting, act, statement, and overt act; customer and product information; price quotations; and gain-and-loss calculations that formed the basis of the indictment. The court understandably characterized those demands as seeking "extremely detailed evidence." *United States v. Chen*, No. CR 09-110 SI, 2011 WL 332713, at *6–8 (N.D. Cal. Jan. 29, 2011). Here, despite the Indictment's length, the government declines to identify the basics (the co-conspirators, claims, and kickbacks causing the billion-dollar fraud) and the Government's theory of criminal liability against Mr. Rowan. Mot. at 12–17.

*Chen* also involved extensive pre-indictment disclosure and years of related litigation. Prior to the indictment there, the government met separately with each defendant's counsel to explain the charges and share evidence. *Chen*, 2011 WL 332713, at *6. The defendants also acknowledged years of familiarity with the charges and core evidence, including through extensive civil litigation on the same subject matter, and some had already formulated defenses. *Id.* at *7–8. None of that is true here.

The Government has not proffered its theory of the case, completed a reverse proffer (despite requests), or even identified inculpatory documents specific to Mr. Rowan. There is no related civil litigation against Mr. Rowan. Although Mr. Rowan knew of an investigation into Company 1, he only learned he was a target when he was arrested. And current counsel were retained about a week after his arrest, rather than years earlier. *Chen* therefore offers little guidance.

Instead, the Court should follow its prior decisions and those of other colleagues in the District of Arizona. In *Windley*, this Court rejected the government's argument that the defendant should be required to rely solely on discovery to prepare a defense. *United States v. Windley*, No. CR-10-660-2-PHX-DGC, 2012 WL 2813859, at *4 (D. Ariz. July 10, 2012) (Campbell, J.). Although the government had produced thousands of pages and cited where additional names and locations of the offense could be found, the Court held that critical particulars "should be provided by the government, and not merely by reference to the 5,500 pages of discovery produced to date." *Id.* at *4. The volume of discovery produced in *Windley* paled in comparison with the discovery already produced in this case—let alone the discovery

the Government has represented is to come—which already exceeds 2.5 million documents, many of which are themselves hundreds of pages long. Even with its more modest discovery, the *Windley* court ordered a bill of particulars identifying co-conspirators, victims, and locations that the government intended to identify at trial and had omitted from the indictment, and separately required the locations of the substantive conduct alleged. *Id.* at *4–5.

Likewise, in *Harbour*, despite a nineteen-page superseding indictment, approximately 47,500 documents produced in discovery, eighty-one identified trial exhibits, and a preliminary witness list, the court required identification of "exactly what the false statements are, what about them is false, who made them, and how [the defendant] caused them to be made" in the alleged Ponzi scheme. *United States v. Harbour*, No. CR-19-00898-001-PHX-DLR, 2021 WL 842146, at *1–2 (D. Ariz. Mar. 4, 2021) (quotation omitted). It also ordered identification of alleged Ponzi payments while denying demands for a complete factual basis and other evidence. *Id.* at *2–3. In both *Windley* and *Harbour*, the court denied the government's attempt to rely on provided discovery to obviate the need for a bill of particulars. *Windley*, 2012 WL 2813859, at *4; *Harbour*, 2021 WL 842146, at *2 (citing *United States v. Muhammed*, No. CR-12-01793-PHX-DGC, 2013 WL 5200117, at *2 (D. Ariz. Sept. 16, 2013) (Campbell, J.)). Here, the Court should follow its prior decisions and order the Government to provide the bare minimum information, as requested, so that Mr. Rowan can prepare his defense.

**2. The Government does not specify how the substantive offenses are allegedly attributable to Mr. Rowan.**

The Indictment does not specify whether, for each substantive count, Mr. Rowan allegedly committed or attempted the charged act, aided and abetted another in committing it, willfully caused another to commit it, or some combination. Counts 2–4 allege that Mr. Rowan "execute[d], and attempt[ed] to execute" a health care fraud scheme and, "aided and abetted by, and aiding and abetting" others, "submitted and caused to be submitted" three claims to Medicare. Indictment ¶¶ 62, 65. Counts 6–8 use the same bidirectional aiding-and-abetting formulation to allege that Mr. Rowan "offer[ed] and pa[id]" three wire transfers as unlawful remuneration. *Id.* ¶ 70. Counts 9–10 allege that Mr. Rowan, again "aided and abetted by, and



DMFIRM #4906-6925-7932 v1

aiding and abetting" others, "engaged and attempted to engage" in two monetary transactions. *Id.* ¶ 72. Because each substantive count cites 18 U.S.C. § 2, and Counts 2–4 also allege that Mr. Rowan "caused" claims to be submitted, those formulations leave open direct liability; attempt for Counts 2–4 and 9–10; aiding and abetting under § 2(a); willful causation under § 2(b); or some combination. The Government must inform Mr. Rowan of its theory.

Mr. Rowan raised this attribution problem in the Motion. Mot. at 14–16. The Government responds that the absence of direct involvement in patient treatment or specific instructions to providers does not preclude (and represents a "fundamental misunderstanding" of) conspiracy liability. Opp. at 13 n.5. *That misses the point.* Mr. Rowan does not contend that direct commission is required to join a conspiracy. He was a sales executive at Company 1 several steps removed from the charged clinical and billing conduct: Company 1 employees sold allografts to distributors; distributors used sub-distributors to reach clinics; clinic medical directors supervised nurse practitioners; nurse practitioners applied the allografts; and clinics submitted claims to federal health care programs. The Government alleges that some conduct along this chain was unlawful and attributable to Mr. Rowan. The question is how. For each substantive count, does the Government allege that he personally committed or attempted the charged act, or that he aided, abetted, or caused another person to do so? The Government should be required to provide these particulars.

*Vargas* supports this right. There, the court required the government to disclose whether it was proceeding on an aiding-and-abetting theory, while declining to require the particular conduct by which it would prove that theory. *United States v. Vargas*, No. 15-cr-00530-BLF-2, 2016 WL 1446773, at *4 (N.D. Cal. Apr. 13, 2016). *Harbour* also confirms that the Government may nevertheless be required to identify the attribution itself: the court ordered it to state who made the alleged false statements and how the defendant allegedly caused them, while denying demands for the complete factual basis. *Harbour*, 2021 WL 842146, at *2–3.

Mr. Rowan therefore asks the Government to identify, for each of Counts 2–4 and 6–10, ***first***, whether it presently relies on direct liability, attempt where charged, aiding and abetting under 18 U.S.C. § 2(a), willful causation under 18 U.S.C. § 2(b), or any combination; and

***second***, where it relies on § 2, the person or entity alleged to have performed the act constituting the offense and the general act or function by which Mr. Rowan allegedly aided, abetted, or caused its commission.

**3. The Government has not defined the full alleged false-claim universe or the basis of alleged falsity for Counts 2–4.**

The August 21 discovery letter identified two categories of claims the Government considers false: (1) all Company 1 allograft reimbursement claims submitted by Apex Mobile and APX; and (2) all Company 1 allograft reimbursement claims submitted by providers while affiliated with Nugeneron JV LLC Series C01–C14, which the Government refers to as the "shell company" in the Indictment. Exhibit 1, at 2. But the Government immediately added: "These are not all claims that the Government considers to be false and fraudulent." *Id.* The disclosure therefore defines part, but apparently not all, of the claims universe the Government alleges formed the scheme charged. The Government's billion dollar false-claims theory therefore remains unlimited and impossible to defend.[3]

Distinct from but related to that scheme-wide gap is the open question of why the claims charged in Counts 2–4 were false. Paragraph 59 alleges that all Apex Mobile and APX claims were false for four broad reasons—misrepresented acquisition cost, medical unreasonableness and lack of necessity, sales-representative kickbacks, and provider kickbacks—and paragraph 64 incorporates those allegations into Counts 2–4. Indictment ¶¶ 59, 64. Paragraph 65 then alleges that each charged APX claim was medically unreasonable and unnecessary, ineligible for reimbursement, and procured through illegal kickbacks, bribes, and rebates. *Id.* ¶ 65. Those categorical allegations may indicate that the Government invokes every broad theory as to every count, but they do not identify, for each charged claim, the

[3] For example, the Government seems to affirm that Mr. Rowan, many steps removed from the claims submission process, caused the submission of *both* false and valid claims. *See* Indictment ¶¶ 58–59 (stating that $1.2 billion of $2.2 billion in claims were false). The Government must present a theory explaining what Mr. Rowan did to submit valid claims versus what he did to cause the submission of false claims. Otherwise, this case remains impossible to defend.

particular clinical circumstance, reimbursement defect, remuneration arrangement, or acquisition-cost representation, invoice, or omission on which the Government relies.

The Government should identify ***first*** each additional objectively defined claim category and its applicable falsity theory, and ***second***, for each of Counts 2–4, the clinical circumstance, reimbursement defect, remuneration arrangement, and acquisition-cost or invoice theory on which it relies.

**4. The Government's August 21 letter similarly fails to provide a complete trial co-conspirator list and identify the conduct attributed specifically to Mr. Rowan.**

Throughout the Indictment, collective allegations against "Rowan and others" create two related but distinct notice problems by obscuring both who the alleged participants are and which conduct the Government attributes *specifically to Mr. Rowan*. The Government's August 21 letter partially addressed the first issue by naming twenty-four alleged co-conspirators, but expressly stated that the provided list "is not exhaustive and does not reflect the names of every individual considered by the government to be a co-conspirator." Exhibit 1, at 1–2. The August 21 letter does not identify whether each listed person or entity allegedly joined the conspiracy charged in Count 1, the conspiracy charged in Count 5, or both, and leaves room for additional names that it presently intends to identify during trial. If the list in the August 21 letter includes everyone the Government presently intends to identify at trial, the Government could have simply said so. The fact that it did not make such a simple statement speaks volumes.

Even a complete list of names and associated counts, however, would not resolve the separate question of what *Mr. Rowan* allegedly did. Throughout the operative manner-and-means allegations, the Indictment pleads four mechanisms in largely collective terms, stating that "ROWAN, through Company 1, and others," (i) contracted with and paid sales representatives, Indictment ¶¶ 35–36, 40; (ii) agreed to pay and authorized provider rebates, marketed the resulting reimbursement spread, and intended providers to submit claims at the unreduced price, *id.* ¶¶ 41–45; (iii) authorized, facilitated, and directed the use of sham

invoices, *id.* ¶¶ 46–49; and (iv) set up and implemented the alleged shell company arrangement, *id.* ¶¶ 50–56. Although the Indictment provides a Rowan-specific example within some categories, *see, e.g.*, *id.* ¶ 44, it does not state whether the broader collectively pleaded conduct is attributed personally to Mr. Rowan or instead was performed by other participants. This makes it impossible for the defense to perform a basic analysis of when these alleged co-conspirators joined the alleged conspiracies, which conspiracies they joined, and whether their alleged acts are even legally attributable to Mr. Rowan.

Paragraph 69 presents a related, finite attribution issue. It alleges that Mr. Rowan "committed or caused to be committed" the listed overt acts. Paragraph 70 separately alleges that Mr. Rowan, "aided and abetted by, and aiding and abetting" others, "offer[ed] and pa[id]" the transfers identified in paragraphs 69(d), (f), and (h). Indictment ¶¶ 69(d), (f), (h), 70. But neither paragraph states what Mr. Rowan allegedly did to offer, pay, cause, or aid those transfers, and paragraphs 69(g) and (i) identify only additional transfers received by APX or Apex, without stating what Mr. Rowan allegedly did, if anything, to make or cause to be made each transfer. *Id.* ¶ 69(g), (i).

Accordingly, the Court should require the Government to identify three particulars. ***First***, it should identify whether each disclosed co-conspirator allegedly joined the conspiracy charged in Counts 1, 5, or both, and identify any additional known person or entity it intends to identify at trial as a co-conspirator, specifying the applicable conspiracy. ***Second***, at the level of the four alleged mechanisms described above and pleaded collectively in paragraphs 35–36 and 40–56, it should identify the conduct attributed specifically to Mr. Rowan rather than other participants. ***And third***, for the transfers identified in paragraphs 69(d), (f), and (h), it should identify what Mr. Rowan allegedly did to offer, pay, cause, or aid those transfers; and, for paragraphs 69(g) and (i), what he allegedly did to commit or cause them.

**B. Searchable but still incomplete discovery does not cure those omissions.**

The Government began its production after Mr. Rowan filed his Motion, and its opposition to the Motion principally rests on the argument that the Motion is "premature" because particulars can be found in organized discovery "produced and forthcoming." Opp. at

2, 7–8, 19. Searchability helps counsel locate evidence after the Government's theory is sufficiently articulated, but discovery—however voluminous it may end up being—does not itself state which theory or theories the Government invokes, which claims it places within the scheme, nor which collective acts it attributes to Mr. Rowan. Indeed, to the extent that discovery, once completed, includes the over 4 million documents that the Government says are forthcoming, the discovery makes Mr. Rowan's Motion more necessary, not less.

**1. This Court has rejected reference to discovery as a substitute for critical particulars.**

"Full discovery will obviate the need for a bill of particulars," but here discovery is incomplete and the Government will not state when it will be complete. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The Opposition states that more than 5.7 million additional documents are still being prepared and that the Government will confer only "[o]nce this production is complete." Opp. at 6. The subsequent production letters (which represent that over 4 million documents remain outstanding) again state that additional productions will be made "on a rolling basis." Exhibit 4, at 1; Exhibit 5, at 1.[4] *Long* permits the Court to consider disclosures actually made, but does not permit the Government to defeat a timely Rule 7(f) motion by promising that future discovery will eventually answer Mr. Rowan's questions.[5] This Court similarly found *in Muhammed* that incomplete discovery is grounds for a bill of particulars where the government—having already produced nearly 40,000 pages of discovery—"assur[ed]" that "current and future discovery 'will provide enough information.'"

---

[4] Other claims by the Government in its response are plainly inadequate. For example, the Government states that "[p]ublic charging and plea documents filed against numerous co-conspirators" provided notice to Mr. Rowan. Opp. at 19. The Government identifies no place where those documents state the liability modes, residual claim categories, or allocation of the collective allegations as they pertain to *Mr. Rowan*. Indeed, no public charging or plea document in a related case so much as names Mr. Rowan.

[5] Mr. Rowan filed the Motion on August 9, 2026, eleven days after his initial appearance and arraignment in the District of Arizona and within Rule 7(f)'s fourteen-day period. *See* Fed. R. Crim. P. 7(f). The Government's assertion that the Motion was nevertheless "premature" would force a defendant to choose between filing within Rule 7(f)'s deadline and being faulted for filing too soon, or waiting for discovery to conclude at some unspecified date and then seeking leave to file out of time. Rule 7(f) creates no such dilemma.

2013 WL 5200117, at *2. The Court rejected the government's approach and held its assurance was "not enough" where the necessary facts were said to exist "somewhere in the tens of thousands of pages." *Id.* The Court then ordered the precise dates, locations, and victim identities necessary to define substantive counts even though those could conceivably eventually be found within the government's incomplete and voluminous discovery. *Id.* The same holding should apply here.

**2. The Government cannot indict a large conspiracy and then claim it is too large to explain.**

The Government asserts that providers submitted more than 114,000 claims related to Company 1 products and argues that a "hyper-specific and granular" response would be unreasonable and unnecessary. Opp. at 18. First, it should go without saying that *Mr. Rowan is not Company 1* and the size of Mr. Rowan's employer cannot affect his right to a defense. Second, scale does not permit the Government to leave undefined the claim categories, falsity theories, remuneration arrangements, and conduct attributed to Mr. Rowan, the sole defendant in this case. Mr. Rowan's right to understand the theory of his own liability cannot disappear because the Government chose to charge a scheme of exceptional scale. Neither Mr. Rowan nor the Court can participate in a trial by surprise.

The Government has already demonstrated a workable solution. Its August 21 letter identified two broad claim categories: all Company 1 allograft reimbursement claims submitted by Apex Mobile and APX, and all such claims submitted by providers while affiliated with Nugeneron JV LLC Series C01–C14. Exhibit 1, at 2. It can complete that categorical disclosure by identifying any additional, objectively defined categories and the theory or theories applicable to each; where every pleaded theory applied, the Government could say "all." Likewise, it can identify Mr. Rowan's alleged act or function with respect to a charged transaction or collectively pleaded mechanism without cataloguing every downstream claim or item of proof. The Government need not list every claim, invoice, payment, witness, document, or other item of evidence.

## III. CONCLUSION

Mr. Rowan's request for a bill of particulars is not mere defense posturing. The orderly presentation of justice, Ninth Circuit standards, and this Court's prior decisions demand it. The particulars are necessary to prepare a defense against accusations that *the Government affirmatively continues to decline to define*. Mr. Rowan respectfully requests that the Court grant the Motion as narrowed by the Government's partial disclosures and this Reply and direct the Government to provide a bill of particulars identifying:

1) For each of Counts 2–4 and 6–10, the mode or modes of liability the Government presently intends to pursue and, where it relies on derivative liability under 18 U.S.C. § 2, the person or entity alleged to have performed the underlying act and the general act or function attributed to Mr. Rowan;
2) Each additional objectively defined category of claims on which the Government presently intends to rely to prove the charged scheme, together with the falsity theory or theories and any remuneration arrangement or other allegedly unlawful feature applicable to each category;
3) For each of Counts 2–4, the particular basis or bases of falsity alleged as to the charged claim;
4) Whether each person or entity disclosed on August 21 allegedly joined the conspiracy charged in Count 1, the conspiracy charged in Count 5, or both, and any additional known person or entity the Government presently intends to identify at trial as a co-conspirator, specifying the applicable conspiracy;
5) Within the four alleged mechanisms pleaded collectively in paragraphs 35–36 and 40–56 of the Indictment, the act or function attributed specifically to Mr. Rowan, as distinguished from conduct attributed to other participants; and
6) For each transfer alleged in paragraphs 69(d), (f), and (h), what Mr. Rowan allegedly did to offer, pay, cause, or aid each transfer; and for paragraphs 69(g) and (i), what Mr. Rowan allegedly did to commit or cause each transfer.

/ / /

Respectfully submitted this 31st day of August, 2026,

*/s/ Louis J. Manzo*
Louis J. Manzo
BEVERIDGE & DIAMOND, P.C.

Mark S. Kokanovich
Helen Hitz
BALLARD SPAHR LLP
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2026, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

*/s/ Louis J. Manzo*
Louis J. Manzo