Louis J. Manzo (*pro hac vice*)
LManzo@bdlaw.com
Alyse I. Adamson (*pro hac vice*)
AAdamson@bdlaw.com
BEVERIDGE & DIAMOND PC
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

Mark S. Kokanovich (SBN 021168)
kokanovichm@ballardspahr.com
Helen Hitz (SBN 039579)
hitzh@ballardspahr.com
BALLARD SPAHR LLP
1 E Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5400
Facsimile: (602) 798-5595

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Brian Rowan,

Defendant.

Case No. 26-CR-00660-PHX-DGC (MTM)

**REPLY IN SUPPORT OF MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS**

## TABLE OF CONTENTS

I. Introduction ..... 1
II. Argument ..... 2
A. Rule 6 permits disclosure to establish grounds for dismissal, and Mr. Rowan has supplied a concrete basis for that relief. ..... 2
B. The Government's treatment of Rowan's statements establishes a particularized need. ..... 3
1. The August 8 recording demonstrates a material discrepancy in the Government's account of a charged overt act. ..... 4
2. Ms. Gehrke's account further supports particularized need. ..... 6
C. Rowan is entitled to disclosure of the grand jury's legal instructions. ..... 7
D. Disclosure reduces the serious risk of constructive amendment and double jeopardy ..... 8
E. The need for disclosure outweighs the secrecy interests in these materials. ..... 9
1. Disclosure is needed to assess potential prejudice. ..... 9
2. The secrecy factors favor disclosure. ..... 10
3. Mr. Rowan's request is narrowly tailored. ..... 11
III. Conclusion ..... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988) ....................2, 7, 13

*Costello v. United States*,
350 U.S. 359 (1956) ....................3

*Dennis v. United States*,
384 U.S. 855 (1966) ....................4

*Douglas Oil Co. v. Petrol Stops Northwest*,
441 U.S. 211 (1979) ....................5

*In re Grand Jury Proc.*,
62 F.3d 1175 (9th Cir. 1995) ....................13, 14

*Kotteakos v. United States*,
328 U.S. 750 (1946) ....................10

*United States v. Al Mudarris*,
695 F.2d 1182 (9th Cir. 1983) ....................8, 13

*United States v. Alter*,
482 F.2d 1016 (9th Cir. 1973) ....................9

*United States v. Belton,*
No. 14-CR-00030-JST,2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) ....................9

*United States v. Bennett*,
702 F.2d 833 (9th Cir. 1983) ....................6

*United States v. Booth*,
No. 2:08-CR-00283-RCJ, 2012 WL 2782598 (D. Nev. July 9, 2012) ....................9

*United States v. Chanen*,
549 F.2d 1306 (9th Cir. 1977) ....................8

*United States v. Diaz*,
236 F.R.D. 470 (N.D. Cal. 2006) ....................9

*United States v. Dipentino*,
242 F.3d 1090 (9th Cir. 2001) ........ 11

*United States v. Duran*,
189 F.3d 1071 (9th Cir. 1999) ........ 10

*United States v. Johnston*,
No. CR-03-1167-PHX-DGC, 2006 WL 276937 (D. Ariz. Feb. 3, 2006) ........ 4

*United States v. Lacey,*
No. CR-18-00422-001-PHX-SMB, 2020 WL 108643 (D. Ariz. Jan. 9, 2020) ........ 4, 6, 10

*United States v. Muhammed*,
No. CR-12-01793-PHX-DGC, 2013 WL 5200117 (D. Ariz. Sept. 16, 2013) ........ 4

*United States v. Plummer*,
941 F.2d 799 (9th Cir. 1991) ........ 5

*United States v. Pokorny*,
No. 26-CR-00018-JST-1, 2026 WL 1270616 (N.D. Cal. May 8, 2026) ........ 9

*United States v. Powell*,
No. 22-cr-00003-JSW-1, 2024 WL 3052966 (N.D. Cal. June 18, 2024) ........ 9, 11

*United States v. Reid*,
477 F. Supp. 3d 1174 (W.D. Wash. 2020) ........ 3, 13

*United States v. Samango*,
607 F.2d 877 (9th Cir. 1979) ........ 3, 8, 13

*United States v. Star*,
470 F.2d 1214 (9th Cir. 1972) ........ 15

*United States v. Stepanyan*,
No. CR 15-0234 CRB (JSC), 2016 WL 4398281 (N.D. Cal. Aug. 18, 2016) ........ 10

*United States v. Tham*,
665 F.2d 855 (9th Cir. 1981) ........ 8

*United States v. Walczak*,
783 F.2d 852 (9th Cir. 1986) ........ 4

*United States v. Ward*,
747 F.3d 1184 (9th Cir. 2014) ........ 11

*United States v. Way*,
No. 1:14-CR-00101(DAD)(BAM), 2015 WL 8780540 (E.D. Cal. Dec. 15, 2015) ............... 14

*United States v. Weinstein*,
No. CR-25-00541-001-PHX-DJH, 2025 WL 1884247 (D. Ariz. July 8, 2025) ............. 12, 14

*United States v. Williams*,
504 U.S. 36 (1992) ............... 8

*United States v. Yazzie*,
No. CR-19-08059-01-PCT-SPL, 2021 WL 3511155 (D. Ariz. Aug. 9, 2021) ............... 4

*Zoellner v. City of Arcata*,
No. 18-CV-04471-EMC (DMR), 2021 WL 2417134 (N.D. Cal. June 14, 2021) ............... 14

**STATUTES**

18 U.S.C. § 3500(b) ............... 14
18 U.S.C. § 3500(e)(3) ............... 14

**RULES**

Fed. R. Crim. P. 6(e)(3)(E)(ii) ............... 2

## I. INTRODUCTION

The Government has charged Mr. Rowan with participating in a nationwide conspiracy where, if convicted, he faces a Guidelines sentence amounting to de facto life imprisonment. Despite the gravity of this case, there is highly suggestive evidence that the Government's presentation to the grand jury was affirmatively and materially misleading, to achieve not justice, but an indictment. Although the Government claims that the issues raised by Mr. Rowan are only "minor," they concern Mr. Rowan's own words, conduct, knowledge, and intent, and so go to the heart of the validity of the charges against him.

The Government supports its indictment with *a single statement* by Mr. Rowan and labels it as an overt act in furtherance of the charged conspiracy.[1] But the undisputed recording of that statement shows that Mr. Rowan was discussing a prospective investor presentation, not the charged conspiracy. Whether the Government presented that materially different account to the grand jury is not a dispute about witness credibility or an attempt to try the case early. If a materially misleading presentation substantially influenced the decision to indict or leaves grave doubt whether that decision was free from such influence, the Indictment should be dismissed.

These are serious allegations with serious consequences, yet the Government dismisses them out of hand relying on readily distinguishable cases. It ignores Mr. Rowan's showing of potential prejudice, weighing of the *Plummer* factors, and narrowly tailored request for materials, and relies instead on broad statements about the importance of grand jury secrecy. But where a particularized need has been shown, grand jury secrecy cannot be used to prevent the lawful examination of alleged misconduct within that process. Mr. Rowan has made the required showing under Rule 6(e). The Court should order disclosure or, at minimum, review the requested materials *in camera*.

---

[1] Although the Government alleges a total of nine overt acts, five of them appear to be automated wire transfers from the finance department of Mr. Rowan's employer and the Indictment does not allege that Mr. Rowan himself took any action in relation to those acts. Of the four overt acts that the Government alleges Mr. Rowan took, three involve Ms. Gehrke, discussed below, and the final overt act involving Mr. Rowan is the statement referenced here.

## II. ARGUMENT

### A. Rule 6 permits disclosure to establish grounds for dismissal, and Mr. Rowan has supplied a concrete basis for that relief.

"The court may authorize disclosure . . . of a grand-jury matter: . . . at the request of a defendant who shows that a ground *may exist* to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis added). Misconduct before the grand jury warrants dismissal where it "is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (citation modified). The recording and interview materials concerning Mr. Rowan's alleged overt acts raise the distinct question of whether such "substantial influence" occurred—i.e., they show a ground "may exist" for dismissal—and the requested grand jury transcripts supply the evidence needed to answer that question. Mr. Rowan has made the showing that Rule 6(e) requires.

The Government's assertion that there is "no ground to dismiss" the Indictment, Opp'n. at 5, Dkt. No. 47, does not resolve whether the identified defects warrant disclosure to determine their effect on the grand jury. In *United States v. Reid*, the court identified a prosecutorial misstatement but denied dismissal because the defendant had not established prejudice. 477 F. Supp. 3d 1174, 1185 (W.D. Wash. 2020). It nevertheless ordered *in camera* review of the indicting grand jury's record. *Id.* at 1185-87 ("If evidence showing prejudice exists, the only way Ms. Reid will obtain it is if the court authorizes disclosure of the grand jury materials."). Here, comparing the recording and the Government's accounts reveals specific discrepancies, and the transcripts would establish what the grand jury heard and permit the Court to assess the presentation for prejudice.

An indictment is sufficient to proceed to trial if it is facially valid and returned by an *unbiased* grand jury. *Costello v. United States*, 350 U.S. 359, 363 (1956) (emphasis added). Facial validity does not answer whether the Government's presentation materially misled the grand jury. The decision the Government cites for the rule against challenging inadequate or

incompetent evidence distinguished that issue from prejudicial prosecutorial conduct. *See United States v. Samango*, 607 F.2d 877, 880-84 (9th Cir. 1979) (affirming dismissal due to cumulative effect of presentation of prior testimony, prosecutor's leading questions, and agent's summary testimony biased the grand jury). Similarly, Mr. Rowan identifies specific differences between the recorded exchange and the Government's accounts of it that supply a concrete basis to examine if the grand jury received a materially misleading presentation.

Mr. Rowan has identified specific misrepresentations in the Government's account of a charged overt act, but the Government relies on cases without specific, identifiable factual misrepresentations. *See United States v. Johnston*, No. CR-03-1167-PHX-DGC, 2006 WL 276937, at *2-3 (D. Ariz. Feb. 3, 2006) (Campbell, J.) (speculation that prosecutor presented false evidence); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) ("allege[d] no facts" supporting improper summaries of testimony); *United States v. Muhammed*, No. CR-12-01793-PHX-DGC, 2013 WL 5200117, at *5 (D. Ariz. Sept. 16, 2013) (Campbell, J.) ("no suggestion of prosecutorial misconduct"); *United States v. Yazzie*, No. CR-19-08059-01-PCT-SPL, 2021 WL 3511155, at *2 (D. Ariz. Aug. 9, 2021); *United States v. Lacey*, No. CR-18-00422-001-PHX-SMB, 2020 WL 108643, at *4–5 (D. Ariz. Jan. 9, 2020).

Unlike these cases, Mr. Rowan identifies discrepancies between his recorded words and the Government's accounts of an exchange expressly alleged as an overt act. Disclosure of grand jury transcripts would permit the Court to assess if the grand jury received a materially misleading account and if that presentation substantially influenced the decision to indict.

**B. The Government's treatment of Rowan's statements establishes a particularized need.**

The defendant must show a "particularized need" to support disclosure of grand jury transcripts. *See Dennis v. United States*, 384 U.S. 855, 870 (1966); *Walczak*, 783 F.2d at 857. To determine whether a particularized need exists, a court must find: "(1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and, (3) that only the relevant parts of the transcripts should be disclosed." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (citing *Douglas Oil*

*Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222-23 (1979)). Mr. Rowan meets this burden.

**1. The August 8 recording demonstrates a material discrepancy in the Government's account of a charged overt act.**

The Government identifies a single statement from Mr. Rowan's August 8, 2023 meeting with Provider 1 as an overt act in furtherance of the charged conspiracy. Ind. ¶ 69(c), Dkt. No. 3. By cherry-picking one clause from a longer conversation, the Government omits the explanation of what information Mr. Rowan was discussing and why. And in doing so, the Indictment materially misrepresents the quoted statement. *See* Mot. at 10–11, Dkt. No. 38.

The quoted statement in the indictment concerned Provider 1[2] seeking to expand his practice with outside investment, not Mr. Rowan's alleged kickback and false claims conspiracy involving Company 1. Provider 1 explained that he was preparing a presentation to show prospective investors wound-care business mechanics, including its services, products, and reimbursement, and that he wanted them to see "all the numbers." Mot. Ex. 4, 02:15:53–02:18:08. Mr. Rowan responds, asking "that slide deck that's going to your investors," confirms that it is "just for your guys," and says, "so put numbers in it all day." He then cautions: "Just be mindful with it because even though you make money off of it, OIG and DOJ, they don't want you to ever acknowledge you're making money off it or looking for investments. So just be mindful." *Id.* at 02:18:09–02:18:35. The Indictment extracts this warning about acknowledging profits but omits surrounding investor discussion and the words "or looking for investments," presenting the statement as furthering the charged conspiracy. Ind. ¶ 69(c). In context, Mr. Rowan indisputably was responding to Provider 1's plans to seek outside investment in his practice. The Government omits that context, treating his warning as an act furthering the charged conspiracy, without explaining how it advanced that conspiracy.

The Government's witness interview materials, *produced eleven days after Mr. Rowan filed this Motion*, reinforce the concern about potential misrepresentation. The FD-302 report

[2] Provider 1, identified as "CW1" in the Government's search-warrant affidavit, is a qui tam relator against Legacy Medical, Mr. Rowan's employer. See Ex. 1, Aff. in Supp. of an Application for a Search Warrant ¶ 28 (Dec. 5, 2023), SW_DOJ_000468–000469.

recounts statements that wholesale never happened. The report describes Mr. Rowan as saying: "If it is going to your friends, put the right numbers of profit. If it's going to DOJ or OIG then don't show those profits." Ex. 2, FD-302 Provider 1 (Sept. 19, 2023), INT_003954. The FD-302 also omits that Mr. Rowan was responding to a statement made by Provider 1 where he was "looking for investments." *Id.* at INT_003946–47; Mot. Ex. 4, 02:18:09–02:18:35. The concern therefore extends beyond the Indictment's selective quotation: the Government's investigative materials both omit the context of the exchange and attribute to Mr. Rowan a materially different instruction.

The Government does not address the omitted investor context. Instead, it characterizes Mr. Rowan's challenge as an effort to litigate the merits. Opp'n. at 12. But the distinction between the recorded exchange and the added concealment instruction is precisely why *Lacey* does not apply. There, the court examined the supporting documents and concluded the alleged misrepresentations—including the meaning of "plausible deniability"—presented competing interpretations of the evidence. 2020 WL 108643, at *4–5. Here, it is a *fact*, not a matter of interpretation, that Mr. Rowan's statement regarded Provider 1's investment opportunities.

Nor does Mr. Rowan rely solely on an inability to know whether misconduct occurred, the insufficient showing in *United States v. Bennett*, 702 F.2d 833, 836 (9th Cir. 1983). He has identified the exchange, the omitted context, and the added instruction, all of which bear directly on his alleged knowledge and criminal intent. An express direction to conceal profits from federal authorities would have supplied the grand jury with a materially different account of his conduct from the recorded discussion of an investor presentation.

The Government also dismisses the challenge as "relatively minor" because the Motion disputes only two of nine alleged overt acts. Opp'n. at 15. But counting other alleged acts (most of which are not even attributed to Mr. Rowan himself) does not establish the prejudicial effect of a materially misleading presentation of Mr. Rowan's own words. The relevant inquiry is whether the presentation substantially influenced the grand jury's decision to indict or leaves grave doubt that the decision was free from that influence. *Bank of Nova Scotia*, 487 U.S. at 256. The transcripts would allow the Court to analyze the Government's entire presentation of

this exchange and assess its significance. Mr. Rowan seeks disclosure to determine whether the Government's treatment of this expressly charged act supplies grounds for dismissal.

**2. Ms. Gehrke's account further supports particularized need.**

Ms. Gehrke is central to the allegations about Mr. Rowan's own conduct. Three of the four alleged overt acts describing his communications involve her. Ind. ¶ 69(a), (b), (e). The Government's reference to seven interviews and 24 alleged co-conspirators[3] does not diminish the importance of what she said about his knowledge and participation. Opp'n. at 11, 15.

Not only did Ms. Gehrke tell investigators that she did not think Mr. Rowan "set out to defraud the federal government," Mot. Ex. 1 at 3, INT_001179, her account also supplies critical context for the spreadsheet charged as an overt act. Ind. ¶ 69(a). She reported that Mr. Rowan instructed her not to show the information to providers and not to "sell the spread," which she interpreted as a "wink-wink situation." Mot. at 11 & Ex. 1 at 3. *The Government calls this a credibility dispute.* Opp'n. at 11-12. Did the Government make clear to the grand jury that Mr. Rowan told Gehrke *not* to sell on the spread and *not* to show profit to doctors, which is entirely distinct from how Gehrke interpreted Mr. Rowan's statement? The transcripts would establish whether the Government preserved that distinction.

The Government's discretion to select evidence does not authorize it to distort the evidence selected. *Williams* and *Tham* reject duties to present exculpatory evidence and all matters bearing on witness credibility. *United States v. Williams*, 504 U.S. 36, 51-55 (1992); *United States v. Tham*, 665 F.2d 855, 862–63 (9th Cir. 1981). That does not resolve whether the Government's presentation materially misrepresented Mr. Rowan's words and conduct—the concern supported by the August 8 comparison and Ms. Gehrke's account.

The Government's other authorities confirm the importance of that inquiry. In *Chanen*, the court declined to dismiss where reading prior testimony, rather than presenting live witnesses, was not fundamentally unfair, and where the prosecutor disclosed to jurors that

---

[3] The government cites a list of co-conspirators but, notably, does not describe Mr. Rowan's relationship to them for good reason: there is none. Mr. Rowan has not met or communicated with many of these individuals, much less entered into a criminal conspiracy.

witnesses made prior inconsistent statements. *United States v. Chanen*, 549 F.2d 1306, 1311-12 (9th Cir. 1977). However, in *Samango*, the court found prosecutorial overreach where the prosecutor failed to warn the grand jury about a witness's "doubtful credibility" or to apprise the grand jury it could subpoena a witness's live testimony, and where "some of the jurors were not familiar" with the evidence. 607 F.2d at 881-82. The cumulative effect of the prosecutor's mishandling of evidence warranted dismissal. *Id.* at 884-85; *see also United States v. Al Mudarris*, 695 F.2d 1182, 1187-89 (9th Cir. 1983) (improper to vouch for witnesses' credibility, discourage jurors from reading transcripts of testimony, pressure jurors to reach an immediate decision, and dismiss juror concerns about evidence).

The requested transcripts would show how the Government presented Ms. Gehrke's account of Mr. Rowan's instructions and conduct, whether it attributed her inferences to him as facts, and how that presentation related to the other evidence of his alleged agreement and intent. This bears directly on the substance of the case presented against Mr. Rowan and whether that presentation supplies grounds for dismissal.

**C. Rowan is entitled to disclosure of the grand jury's legal instructions.**

Grand jury secrecy does not foreclose disclosure of legal instructions. The Ninth Circuit has recognized that a defendant is "entitled to know the content of the court's charges to the grand jury." *United States v. Alter*, 482 F.2d 1016, 1029 n. 21 (9th Cir. 1973). Though the grand jury proceedings may be secret, "the ground rules by which the grand jury conducts those proceedings are not." *Id*.

Relying on *Alter*, several courts in the Ninth Circuit have held that instructions on the charged offenses fall outside Rule 6(e) and do not require a showing of particularized need. *See United States v. Belton*, No. 14-CR-00030-JST, 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015); *United States v. Booth*, No. 2:08-CR-00283-RCJ, 2012 WL 2782598, *5-6 (D. Nev. July 9, 2012); *see also United States v. Diaz*, 236 F.R.D. 470, 477-78 (N.D. Cal. 2006) (granting unopposed request for instructions given to any grand jury that heard evidence in the matter). Courts have also ordered disclosure after *in camera* review. *See United States v. Pokorny*, No. 26-CR-00018-JST-1, 2026 WL 1270616, at *8 (N.D. Cal. May 8, 2026); *United*

*States v. Powell*, No. 22-cr-00003-JSW-1, 2024 WL 3052966, at *2-3 (N.D. Cal. June 18, 2024) (considering competing approaches to disclosure).

Mr. Rowan has identified overlapping allegations in Counts 1 and 5 involving different statutory objects, elements, and mental states. Mot. at 5-7. He has explained how the presentation of charges and evidence may violate conspiracy requirements. *Id*. at 6 (citing *United States v. Duran*, 189 F.3d 1071, 1080 (9th Cir. 1999) and *Kotteakos v. United States*, 328 U.S. 750, 773 (1946)). This is a particularized need, even though such need is not required for disclosure of grand jury instructions.

The Government relies on the Indictment's recitation of the conspiracy elements and Mr. Rowan's alleged knowledge and intent. Opp'n. at 9-11. Those allegations do not establish how the grand jury was instructed to distinguish his agreement and intent under two conspiracy counts, particularly where Count 5 incorporates Count 1's purpose and manner and means.

The Government relies on *Lacey* and *United States v. Stepanyan* to require a particularized-need showing. Opp'n. at 9 n.7. But neither decision addressed *in camera* review. *See Lacey*, 2020 WL 108643 at *3 n.3, 5-6 (denying a broad, nonparticularized request to determine what occurred before the grand jury); *United States v. Stepanyan*, No. CR 15-0234 CRB (JSC), 2016 WL 4398281, at *1 (N.D. Cal. Aug. 18, 2016) (denying disclosure where the claim that the RICO conspiracy charge was meritless rested only on the defendant's argument). Those decisions therefore do not resolve Mr. Rowan's alternative request, even if a particularized need showing were required, which it is not.

The Court should order disclosure of the Government's legal instructions to the grand jury. Alternatively, it should review those instructions *in camera* and order disclosure only of those portions that do not include protected information.

### D. Disclosure reduces the serious risk of constructive amendment and double jeopardy.

Mr. Rowan was indicted for participation in a conspiracy to submit false claims and to provide kickbacks. But the Government refuses to identify the specific transactions Mr. Rowan is alleged to have caused. *See generally* Opp'n to Def.'s Mot. for Bill of Particulars, Dkt. No.

28. The Government thinks Mr. Rowan (and the Court) should wait until trial to find out. Criminal trials cannot be done by surprise, nor does the government possess unbounded discretion to present evidence at that time.

The Government must seek conviction on the offenses the grand jury charged. *See United States v. Dipentino*, 242 F.3d 1090, 1095-96 (9th Cir. 2001) (constructive amendment when jury may have based conviction on uncharged work practice); *United States v. Ward*, 747 F.3d 1184, 1192 (9th Cir. 2014) (constructive amendment when indictment was for identity theft as to only two specific victims and the identity of the victims was necessary to satisfy an element of the offense, but the jury heard evidence of other victims). The Indictment's vagueness concerning the boundaries of the alleged agreement, false claims, and kickbacks, prevents Mr. Rowan from knowing whether the government's trial presentation goes beyond the Indictment. Mr. Rowan would be unable to enforce double jeopardy protections in the event of multiple trials. The requested grand jury materials provide the contemporaneous record relevant to the charged offenses and the facts underlying such offenses. In a case like this, where the Government's Indictment does not include basic notice of the false claims and kickbacks attributable to Mr. Rowan, the Court should review the requested materials to assess whether any later change in the Government's theory would exceed those charges.

**E. The need for disclosure outweighs the secrecy interests in these materials.**

The Government invokes grand jury secrecy without identifying how the limited disclosure Mr. Rowan seeks would threaten it. *See* Opp'n. at 14-15. The question is whether the need for secrecy as to these materials outweighs Mr. Rowan's demonstrated need for them.

**1. Disclosure is needed to assess potential prejudice.**

Disclosure of the requested materials is necessary to assess whether the identified discrepancies prejudiced Mr. Rowan before the grand jury. Unlike in *United States v. Weinstein*, No. CR-25-00541-001-PHX-DJH, 2025 WL 1884247, at *1 (D. Ariz. July 8, 2025), Mr. Rowan is not arguing that the Government's failure to present exculpatory evidence to the grand jury was misconduct. The Government calls the asserted misconduct "relatively minor," Opp'n. at 15, but the "cumulative effect" of "errors and indiscretions" may "operate[] to the

defendants' prejudice by producing a biased grand jury." *Samango*, 607 F.2d at 884; *see also Al Mudarris*, 695 F.2d at 1188 (noting "even unintentional misconduct can cause improper influence and usurpation of the grand jury's role"). The discrepancies concern his intent, the agreement, and the Government's presentation of his own conduct to the grand jury. Their significance turns on their potential influence on the grand jury's decision, not the number of other allegations or co-conspirators. *See Bank of Nova Scotia*, 487 U.S. at 256.

**2. The secrecy factors favor disclosure.**

The Ninth Circuit employs five factors to determine the need for secrecy.[4] Where a grand jury investigation "has been terminated," "[t]he importance of the first three factors is insignificant." *In re Grand Jury Proc.*, 62 F.3d at 1179 n.2; *see also Reid*, 477 F. Supp. 3d at 1186 (reduced secrecy interests after indictment and apparent completion of the investigation). Mr. Rowan has been indicted, reducing the fifth factor's weight as to him. *Cf. In re Grand Jury Proc.*, 62 F.3d at 1179 n.2 (increased need for secrecy when "an indictment was not issued").

The fourth factor also favors disclosure. Mr. Rowan requests a limited set of materials—legal instructions and testimony of cooperating witnesses expected to testify and of law enforcement—whose disclosure under the proposed restrictions raises limited concerns about inhibiting future testimony. "[O]n balance, the need for disclosure [of legal instructions] outweighs the need for secrecy." *United States v. Way*, No. 1:14-CR-00101(DAD)(BAM), 2015 WL 8780540, at *6 (E.D. Cal. Dec. 15, 2015). Likewise, the Government must produce grand jury statements relating to a witness's trial testimony after direct examination under the Jencks Act, 18 U.S.C. § 3500(b), (e)(3). The Government identifies no reason why disclosure of law enforcement witness testimony would inhibit those witnesses from reporting investigative facts to the grand jury. *See Zoellner v. City of Arcata*, No. 18-CV-04471-EMC

[4] "(1) [T]he need to prevent the escape of prospective indictees; (2) the need to insure freedom to the grand jury in its deliberations; (3) the need to prevent subornation of perjury and tampering with witnesses by targets of the investigation; (4) the need to encourage free disclosure by witnesses before the grand jury; and (5) the need to protect those exonerated by the grand jury from disclosure of the fact that they were under investigation." *In re Grand Jury Proc.*, 62 F.3d 1175, 1179 n.2 (9th Cir. 1995).

(DMR), 2021 WL 2417134, at *6 (N.D. Cal. June 14, 2021) (minimal concern disclosure would deter full testimony by law enforcement personnel).

The Government responds to none of these factors, instead citing *Weinstein* for the importance of secrecy to future grand juries. *See* Opp'n. at 14 (quoting 2025 WL 1884247, at *2). This invocation does not identify a concrete secrecy interest threatened by the disclosure sought here.[5] The proposed restrictions and *in camera* review protect any such interest.

**3. Mr. Rowan's request is narrowly tailored.**

Mr. Rowan does not request the entire grand jury record. The requested testimony would permit assessment of the identified discrepancies concerning Mr. Rowan's alleged agreement and intent. The motion seeks only the instructions, transcripts of cooperating witnesses likely to testify at trial, and law enforcement testimony—at minimum, law enforcement testimony regarding Mr. Rowan's recorded statement to Provider 1 and Ms. Gehrke's characterizations of Mr. Rowan's knowledge and intent)—and offers safeguards, including the existing protective order, additional court-ordered restrictions, and most importantly, *in camera* review as an alternative to immediate disclosure. Mot. at 16.

## III. CONCLUSION

Mr. Rowan respectfully requests that this Court order: (1) the disclosure of all instructions given to the grand jury, (2) the grand jury transcripts of all cooperating witnesses likely to testify at trial, and (3) the grand jury transcripts of law enforcement officers.

Alternatively, if the Court declines to order direct disclosure, Mr. Rowan respectfully requests in camera review of the requested instructions and testimony, followed by disclosure of those portions the Court determines necessary to avoid injustice.

---

[5] Mr. Rowan does not contend that the Government's use of multiple grand juries is itself improper, and he does not seek materials from those grand juries in this motion. The Ninth Circuit has condemned using a grand jury solely for pretrial discovery after indictment. *See United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972). Mr. Rowan preserves any challenge should the record establish such a practice, or similarly that a pre-indictment grand jury in an alternative jurisdiction obtained evidence that would have been material to the Arizona grand jury's probable cause determination and was purposefully withheld from the Arizona grand jury in order to improperly influence its decision.

RESPECTFULLY SUBMITTED this 1st day of October, 2026.

BALLARD SPAHR LLP

*/s/ Mark Kokanovich*
Mark S. Kokanovich
Helen Hitz
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: (602) 798-5400
Facsimile: (602) 798-5595

BEVERIDGE & DIAMOND, P.C.
Louis J. Manzo
Alyse I. Adamson
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Facsimile: (202) 789-6190

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October, 2026, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

*/s/ Britney Tomko*
Britney Tomko