TIMOTHY COURCHAINE
United States Attorney
District of Arizona

MATTHEW WILLIAMS
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
U.S. Department of Justice

SHANE BUTLAND
WILLIAM HOCHUL III
Trial Attorneys
Health Care Fraud Section
National Fraud Enforcement Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-286-1177
Email: Shane.Butland2@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Brian Rowan,<br>Defendant. | No. CR-26-00660-PHX-DGC<br>**MOTION FOR COMPLEX CASE DESIGNATION** |

Pursuant to Local Rule 16.2(a), the United States of America, through the undersigned counsel, submits this non-consented motion to designate the above-captioned case as complex.[1] Such a designation is appropriate because this case is

[1] In a September 23, 2026, email to the government, counsel for the Defendant stated that he could not advise the Defendant on a position concerning this motion until he "receive[d]

complex within the meaning of the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii). Specifically, this case involves a nationwide and multi-year conspiracy involving hundreds of participants and thousands of allegedly fraudulent Medicare claims, numerous out-of-state witnesses, voluminous discovery totaling millions of records, and complex legal issues involving attorney-client privilege. Instructively, a related case that is subsumed by the allegations in this case has already been designed complex by a court in this District. *See United States v. Kontos, et al.*, Case No. 25-CR-00915, ECF No. 36 (D. Ariz. July 11, 2025) (Brnovich, J.).[2]

## I. PROCEDURAL POSTURE

On June 17, 2026, the Defendant was indicted for conspiracy to commit health care fraud (18 U.S.C. § 1349), health care fraud (18 U.S.C. §§ 1347 and 2), conspiracy to defraud the United States and to receive health care kickbacks (18 U.S.C. § 371), payment of kickbacks (42 U.S.C. § 1320a-7b(b) and 18 U.S.C. § 2), and transactional money laundering (18 U.S.C. §§ 1957 and 2). ECF No. 3.

The Indictment alleges that the Defendant, an executive of a company that sold amniotic membrane allografts ("Company 1"), caused hundreds of millions of dollars in illegal kickbacks, bribes, and rebates to be paid to sales representatives and medical providers across the country to unlawfully induce providers to buy the company's allografts. *Id*. at 2. The Indictment further alleges that the Defendant and his co-conspirators used sham invoices and pass-through bank accounts associated with a shell company to conceal the illegal kickbacks, bribes, and rebates, and then lied to Medicare about the providers' actual acquisition cost of the allografts, which inflated Medicare's reimbursement, and thus the providers' profits, for those products. *Id*. at 2-3. Induced by

---

and review[ed] discovery" and "receive[d] further information about the extent of the government's case." In a conference call with the government on October 6, 2026, counsel for the Defendant reiterated this position.

[2] None of the parties sought a complex case designation in the other related cases noticed by the Government (ECF No. 6) as those defendants either pleaded guilty to Informations or engaged in plea negotiations soon after indictment.

the unlawful financial incentives, sales representatives and providers targeted elderly patients, many of whom were terminally ill in hospice care, and caused medically unreasonable and unnecessary allografts to be applied to those patients. *Id*. at 3. Providers billed Medicare and other federal health care programs over $4 billion for Company 1 allografts between December 2021 through June 2024, resulting in over $2 billion in reimbursements. *Id*. The Defendant personally received over $24 million from Company 1. *Id*.

On July 29, 2026, the Defendant was arraigned and released pending trial. ECF No. 17. A protective order was issued the same day. ECF No. 16. Between August 10 and October 2, 2026, the government produced over 6.5 million records (totaling over 13 million pages) to the Defendant in discovery, which includes, among other items:

- Approximately 280 interview reports, dozens of which concern individuals and entities the government identified as co-conspirators in a letter sent to the Defendant on August 21, 2026, (the "August 21 letter");
- Approximately 39 search warrants and corresponding affidavits, including warrants for the Defendant's Company 1 email account;
- Plea agreements (which contain detailed factual bases) and charging documents for 7 individuals identified as co-conspirators in the August 21 letter;
- The August 8, 2023, recording cited in the Indictment;
- Medicare claims data and tens of thousands of pages of bank records, including claims data and financial records that correspond to charged overt acts and substantive offenses;
- Over 158,000 emails associated with various Company 1 email accounts, including over 25,000 emails that were sent to or received by the Defendant's Company 1 email account; and
- Over 450,000 emails associated with various Apex Medical and APX Mobile Medical email accounts, entities which are extensively referenced in the Indictment and identified as co-conspirators in the August 21 letter.

A status conference is scheduled for October 13, 2026, to discuss a firm trial setting. ECF No. 27 at 2.

## II. LEGAL STANDARD

Under the Speedy Trial Act, a defendant must be tried within seventy days after being charged or initially appearing. 18 U.S.C. § 3161(c)(1). However, "the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delays in particular cases." *Zedner v. United States*, 547 U.S. 489, 497-98 (2006). 18 U.S.C. § 3161(h)(7)(A) permits a court to grant a continuance and exclude the resulting delay on its own motion or at the request of the defendant or the government if it finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id*. This provision "gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." *Zedner*, 547 U.S. at 499.

Among the non-exhaustive list of factors "which a judge shall consider" in determining whether the ends of justice are served by a continuance is as follows:

> Whether the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

18 U.S.C. § 3161(h)(7)(B)(ii)[3]; *see also United States v. Pikus*, F.4th 39, 53 (2d Cir. 2022) (a case is "complex" if it involves numerous defendants, novel legal issues, myriad claims, or many necessary witnesses); *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993) (factors supporting a complex case designation include conduct in multiple states, voluminous discovery, and witnesses from outside the state in which the charges were

[3] Local Rule 16.2 provides, consistent with 18 U.S.C. §§ 3161(h)(7)(A) and (B)(ii), that, "[o]n motion of any party or at the Court's own initiative, the Court may treat the case as unusual or complex within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii)." *See* Local Rule 16.2(a).

brought).

## III. ARGUMENT

The case against the Defendant is "complex" within the meaning of the Speedy Trial Act for several reasons.

First, the nature of the prosecution is complex because the case involves allegations that the Defendant engaged in a nationwide and multi-year conspiracy involving hundreds of participants and thousands of fraudulent Medicare and other health insurance program claims. The Defendant, a former executive of one of the country's largest allograft distribution companies (anonymized as "Company 1" in the Indictment)—whose customers (individual medical providers and provider groups throughout the country) billed Medicare over $4 billion for Company 1's products in about 2.5 years—is criminally charged with fraudulently inducing purchases of his company's products by conspiring with fellow Company 1 employees, sales representatives, and medical providers to falsely represent to Medicare the actual acquisition cost of Company 1 allografts, thereby inflating Medicare's reimbursement amount and generating enormous profits for its customers. The Defendant, in his motion for disclosure of grand jury materials, essentially concedes the complexity of the charges against him, noting that the "incorporated allegations span four distinct factual scenarios that implicate hundreds of individual actors across the United States: commissions paid to sales representatives, rebates paid to providers, the alleged 'shell company' arrangement, and medically unnecessary treatment." ECF No. 38 at 5.

Second, the government expects to call numerous witnesses at trial who reside outside Arizona, including two co-conspirators who were sentenced to lengthy prison terms for their roles in this conspiracy and will therefore need to be transported from their designated federal facilities to the U.S. District Courthouse in Phoenix to testify. The government also anticipates that the government's trial exhibits will be voluminous, to include electronic communications, financial records, and medical records.

Third, the case warrants a complex case designation based on the sheer volume of discovery. To date, the government has produced over 6.5 million records in eight productions totaling over 13 million pages. These records include health care benefit program claims data concerning thousands of claims submitted for Company 1 allografts; financial records associated with hundreds of bank accounts, life insurance policies, real estate purchases, and trusts; more than 250 interview memoranda; hundreds of thousands of emails and other electronic communications; dozens of search warrants and corresponding affidavits; and hundreds of audio and video recordings.

The amount and complexity of the discovery is largely attributable to the reach of the alleged conspiracy: the conspiracy period charged in the Indictment spans 2.5 years, and fourteen defendants across two federal districts[4] (all of whom were identified as the Defendant's co-conspirators) have been charged and/or convicted of crimes involving the ordering, purchasing, and application of Company 1 allografts (e.g., applying Company 1 allografts without medical necessity, receiving unlawful kickbacks from Company 1 in exchange for ordering Company 1 allografts, and receiving unlawful kickbacks from Company 1 in exchange for recommending the ordering of Company 1 allografts).

Fourth, this case involves complex legal issues involving attorney advice provided to the Defendant and others throughout the conspiracy, as well as the attorney-client privilege that may attach to communications concerning that advice. Though the Defendant has not committed to offering or waiving an advice-of-counsel defense, (1) the Defendant affirmatively represented that Company 1's prior counsel approved the

---

[4] *See United States v. Gehrke and King*, No. 24-cr-1040 (D. Ariz.); *United States v. Ching*, No. 24-CR-01075 (D. Ariz.); *United States v. Kontos*, *et al*., No. 25-CR-915 (D. Ariz.); *United States v. Bennett*, No. 25-cr-90 (D. Ariz.); *United States v. Denny*, No. 25-cr-944 (D. Ariz.); *United States v. Palacios*, No. 25-cr-947 (D. Ariz.); *United States v. Jameson*, No. 24-cr-1068 (D. Ariz.); *United States v. Peters*, No. 26-cr-673 (D. Ariz.); *United States v. Kamien*, No. 26-cr-676 (D. Ariz.); *United States v. Huntley*, No. 25-cr-183 (D. Nev.); *United States v. Dubin*, No. 26-cr-166 (D. Nev.).

schemes charged in the Indictment—specifically, Company 1's rebate and "Joint Venture" programs (the latter of which is characterized by the government as a shell company kickback arrangement), *see* ECF No. 20 at 11-12; (2) Company 1 produced to the government letters drafted by attorneys that opined on the legality and compliance of those schemes; (3) the Defendant broadly disseminated the opinion letters to Company 1 sales representatives and providers to vouch for, and assuage concerns regarding, the legality of those schemes; and (4) privilege logs provided by Company 1 indicate that Company 1 withheld and/or redacted over 2,700 pages of purportedly privileged communications involving the Defendant, which, based on Company 1's descriptions, directly relate to those schemes.

As discussed in the government's motion to compel notice of an advice-of-counsel defense (ECF No. 35), the Defendant was represented in a personal capacity by Company 1 (the Defendant's employer) counsel. As such, this is not a typical situation where the Defendant's waiver is all that would be required to allow for the production to the government of relevant attorney-client communications. Instead, Company 1 could argue that it *also* holds the privilege over communications relevant to an advice-of-counsel defense asserted by the Defendant, thereby rendering any attorney-client privilege held by the company potentially unaffected by the Defendant's waiver. The complexity of this legal issue is self-evident.

Furthermore, this case has already generated extensive motions practice, including motions seeking a protective order, a bill of particulars, disclosure of grand jury transcripts, and notice of any advice-of-counsel defense, in addition to the entry of a filter protocol that will govern any privilege assertions made by the Defendant or third parties over materials collected by the government in this investigation, ECF No. 46. The extensiveness of Company 1's and the Defendant's involvement and communications with counsel during the conspiracy period and the likelihood of continued wide-ranging pre-trial motion practice are additional factors warranting a complex case designation.

While the Defendant contends that the 13 million pages of discovery he has already

received is insufficient to inform him as to whether this case is "complex" under 18 U.S.C. § 3161(h)(7)(B)(ii), the law affords the Court the discretion to independently find what is obviously true here: a multi-billion-dollar, multi-year conspiracy involving a nationwide web of complicit actors that bilked federal and private health insurance programs through price manipulation and kickback funneling schemes using sham invoices and shell companies is "complex" within the meaning of the statute. And the complexity of the charges themselves is only exacerbated by the legal opinions, privilege assertions, related prosecutions, out-of-state and in-custody witnesses, and volume of discovery that are involved in this matter. For these reasons, the government respectfully requests that the Court designate this case as complex and exclude time for purposes of the Speedy Trial Act under 18 U.S.C. § 3161(h)(7)(A) and (B)(ii).

## IV. CONCLUSION

For the reasons set forth above, the Court should designate this case complex under Local Rule 16 for the purposes of 18 U.S.C. § 3161(h)(7)(A) and (B)(ii) of the Speedy Trial Act.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Matthew Williams*
MATTHEW WILLIAMS
Assistant U.S. Attorney

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
U.S. Department of Justice

*s/ Shane Butland*
SHANE BUTLAND
WILLIAM HOCHUL III
Trial Attorneys
Health Care Fraud Section
National Fraud Enforcement Division
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of October, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Louis J. Manzo, Esq.
Alyse Adamson, Esq.
Mark Samuel Kokanovich, Esq.
Counsel for Brian Rowan

*s/ Shane Butland*
SHANE BUTLAND
WILLIAM HOCHUL III
Trial Attorneys
Health Care Fraud Section
National Fraud Enforcement Division
U.S. Department of Justice